United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL C. JOHNSON,<br><br>    Plaintiff,<br><br>  v.<br><br>EL CERRITO POLICE DEPARTMENT; CHI LEE; MARIO GUZMAN,<br><br>    Defendants. | No. C 15-2207 WHA (PR)<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO FEDERAL PRO BONO PROJECT; STAYING CASE**<br><br>(Docket No. 28) |

## INTRODUCTION

Plaintiff, a California prisoner proceeding pro se, filed this civil rights case under 42 U.S.C. 1983, against the El Cerrito Police Department and two of its officers, Chi Lee and Mario Guzman. The case was originally assigned to Magistrate Judge Paul Grewal, who dismissed the claims against the El Cerrito Police Department with leave to amend. Plaintiff amended his complaint, but because he did not cure the deficiencies in the claims against the El Cerrito Police Department, those claims were dismissed. Defendants Lee and Guzman answered the claims against them, and they have filed a motion for summary judgment. Plaintiff filed an opposition, defendants filed a reply brief, and plaintiff also filed a sur-reply brief (ECF No. 35). For the reasons discussed below, the motion for summary judgment is **DENIED**.

## STATEMENT

The following facts are undisputed, except where noted.

Plaintiff was arrested at a Chevron station in El Cerrito, California, on December 27, 2012. At 6:35 p.m., a witness called the police and told them that a woman was being assaulted

at the gas station. Defendants Guzman and Lee were two of the officers who came to the station, where they saw plaintiff with a gun in his hand standing near a woman named Amy Gallon. There were people in the area and several avenues for plaintiff to get away, although he did not attempt to do so. Guzman shot plaintiff, which knocked the gun out of his hand. Guzman and Lee shot plaintiff several more times above the waist. In falling to the ground during the shooting, plaintiff hit the left side of his face and eye on concrete. Plaintiff was arrested, and both he and Ms. Gallon were taken to the hospital. Ms. Gallon had a large gash on the top of her head. As a result of the shooting, plaintiff is blind in his left eye, underwent life-endangering surgery, stayed in the hospital for three months, was placed in a wheel chair, and has been in physical therapy for nearly three years. He needs further surgery in his left arm that will require it to be broken.

Plaintiff was charged on multiple counts in Contra Costa County Superior Court, and he pled no contest to charges of kidnaping by force (California Penal Code Section 207), infliction of corporal injury on a spouse (California Penal Code Section 273.5), and being a felon in possession of a firearm (California Penal Code Section 29800(a)(1)). He also admitted to sentence enhancements for personal use of a firearm (California Penal Code Section 12022.53(b)) and being previously convicted for inflicting injury on a spouse. He was sentenced to a term of fifteen years in state prison, which he is currently serving.

The foregoing facts are not disputed, but the parties provide differing accounts of many of the surrounding circumstances. According to defendants, when they arrived at the scene, plaintiff was on top of Ms. Gallon, appeared to be raping her, and was striking her on the head with his gun. Defendants assert that Guzman and other officers at the scene ordered plaintiff to stop, but he continued to hit Ms. Gallon and pointed his gun at her head. Guzman states he fired his gun three or four times at plaintiff, and Lee states that he fired his gun at plaintiff twice. Lee also states that he fired his second shot at plaintiff because plaintiff tried to get up and appeared to reach for his gun.

According to plaintiff, he hit Ms. Gallon on the head before the police arrived, but not after. They were both standing at the gas station, he was not on top of her, and he did not point

2

the gun at the her or at the police.  He further states that neither defendants nor other officers ordered him to stop or not move before they shot him.  In addition, the first shot knocked the gun out of his hand, he did not reach for it, and he was shot five more times.

**ANALYSIS**

A. STANDARD OF REVIEW

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, the moving party wins. *Ibid*.

B. ANALYSIS

1. *Heck v. Humphrey*

Plaintiff claims that defendants Guzman and Lee used excessive force in violation of the Fourth Amendment.  Defendants argue that they are entitled to summary judgment under *Heck v. Humphry*, 512 U.S. 477 (1994).  In *Heck*, the United States Supreme Court has held that to recover damages for an allegedly unconstitutional confinement, or for other harm caused by actions whose unlawfulness would render the confinement invalid, a plaintiff must prove that the judgment has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  512 U.S. at 486-487.  When a state prisoner seeks

1  damages in a Section 1983 suit, the district court must therefore consider whether a judgment in
2  favor of the plaintiff would "necessarily" imply the invalidity of his conviction or sentence; if it
3  would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction
4  or sentence has already been invalidated. *Id.* at 487. But if the district court determines that the
5  plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding
6  criminal judgment against the plaintiff, the action should be allowed to proceed. *Id.* at 487 &
7  n.8. A claim for use of excessive force during the course of an arrest may not necessarily imply
8  the invalidity of the arrest or conviction and therefore may not be barred by *Heck. Guerrero v.*
9  *Gates*, 442 F.3d 697, 703 (9th Cir. 2006).

10        Defendants argue that plaintiff's claim that their use of deadly force was impermissible
11  under the Fourth Amendment, if proven true, impugns plaintiff's conviction for inflicting
12  corporal injury on a spouse with a gun. An element of the offense of inflicting corporal injury
13  on a spouse is that the defendant inflicted an injury "resulting in a traumatic condition." Cal.
14  Pen. Code § 273.5. To prove his claim here, plaintiff will have to show that the defendants used
15  deadly force without having probable cause to believe that the suspect posed "a significant
16  threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471
17  U.S. 1, 7 (1985).

18        If plaintiff proves that defendants shot him without probable cause to believe that he
19  posed "significant threat of death or serious physical injury to the officer or others," this does
20  not "necessarily" mean — as defendants argue — that he did not injure the victim so as to cause
21  her to suffer from "a traumatic condition." For one thing, the "traumatic condition" that
22  plaintiff is convicted of causing could arise from an injury that is not "necessarily" a "serious
23  physical injury." Moreover, the injury that he inflicted on the victim which resulted in the
24  traumatic condition could have preceded the defendants' use of force such that when the
25  officers shot him, there was no longer probable cause to believe that plaintiff posed a significant
26  threat of death or serious physical injury to the victim. A conviction under the California Penal
27  Code "does not bar a Section 1983 claim for excessive force under *Heck* when the conviction
28  and the Section 1983 claim are based on different actions during 'one continuous transaction.'"

4

1  *Hooper v. County of San Diego*, 629 F.3d 1127, 1134 (9th Cir. 2011) (addressing conviction
2  under California Penal Code Section 148(a)(1)) ; *see, e.g., Sanford v. Motts*, 258 F.3d 1117,
3  1120 (9th Cir. 2001) (when a civil rights complaint, brought by a person convicted of resisting
4  arrest, alleges facts indicating that the officer used excessive force *after* the arrest, the complaint
5  is not barred by *Heck*). If plaintiff's account is true — as must be assumed at this stage of the
6  case — then he hit the victim on the head with the gun prior to the defendants' arrival at the
7  scene. Plaintiff claims that when defendants shot him, he was not standing over her and was not
8  pointing his gun at her, the officers or anyone in the vicinity. In addition, according to plaintiff,
9  defendants shot him five times after he no longer had possession of the gun. Such a claim, if
10 proven, does not "necessarily" mean that plaintiff did not previously injure the victim with his
11 gun so as to cause her a traumatic condition. As a result, plaintiff could prove his claim without
12 necessarily implying that his conviction for inflicting a corporal injury on a spouse with a gun.
13 Accordingly, plaintiff's claim is not barred by *Heck*, and defendants are not entitled to summary
14 judgment on those grounds.

15        2.    Reasonable Force

16 Defendants also argue that they are entitled to summary judgment because there are no
17 triable issues of fact as to whether their use of force was unreasonable under the Fourth
18 Amendment. Excessive force claims which arise in the context of an arrest are analyzed under
19 the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394-95
20 (1989). The use of "deadly force" is only justified under the Fourth Amendment where the
21 officer "has probable cause to believe that the suspect poses a significant threat of death or
22 serious physical injury to the officer or others." *Garner*, 471 U.S. at 3.

23 Assuming the truth of plaintiff's account of the circumstances surrounding the incident,
24 a reasonable fact-finder could conclude that defendants shot him without adequate justification.
25 In plaintiff's version of the events, when the defendants arrived at the gas station, plaintiff was
26 not on top of the victim and was not hitting her or pointing the gun at her. Rather, they were
27 both standing. Plaintiff also did not the gun at the police or any bystanders. Defendants did not
28 order him to stop or warn him before they shot him, and after the first shot knocked the gun out

5

1   of his hand, they shot him five more times above the waist. He was not threatening the police
2   or the victim in any manner, nor is there any suggestion or evidence that he tried to escape.

3   While it was certainly dangerous for plaintiff to be holding a gun in public, that does not
4   justify defendants shooting him if — as he contends — he was not pointing the gun at anyone
5   or trying to flee with it. *See Curnow v. Ridgecrest Police*, 952 F.2d 321, 324-25 (9th Cir. 1991)
6   (holding that deadly force was unreasonable where the suspect possessed a gun but was not
7   pointing it at the officers and was not facing the officers when they shot). Furthermore, his
8   initial possession of a gun certainly does not justify defendants' continuing to shoot him five
9   more times after he no longer had it in his hand.

10  Plaintiff's having injured the victim right before the police arrived also did not justify
11  their shooting him. As *Garner* put it, "if the suspect threatens the officer with a weapon or
12  there is probable cause to believe that he has committed a crime involving the infliction or
13  threatened infliction of serious physical harm, deadly force may be used if necessary to prevent
14  escape, and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 11-12. In
15  plaintiff's account, he did not threaten the officers, he did not attempt to escape, and no warning
16  was given by the police before they shot him. "The fact that [a suspect] had committed a
17  violent crime in the immediate past is an important factor but it is not, without more, a
18  justification for shooting him on sight." *Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir.
19  1997).

20  Defendants' argument that the shooting was justified under the Fourth Amendment is
21  based on their version of events, in which plaintiff was attacking the victim, pointed the gun at
22  her head, ignored warnings to stop, and reached for the gun when it was no longer in his hands.
23  As plaintiff offers a counter-narrative in which he disputes each of these points, he has created a
24  number of factual disputes. These factual disputes are material because plaintiff's account of
25  them allows a reasonable fact-finder to conclude that defendants shot him without probable
26  cause to believe that he posed a significant threat of serious injury or death, in violation of the
27  Fourth Amendment.

28  Defendants also argue that they are entitled to qualified immunity. A court considering

6

a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and whether such right was clearly established such that it would be clear to a reasonable officer that his or her conduct was unlawful in the situation he or she confronted. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The factual issues described above preclude granting defendants qualified immunity because it would be clear to any reasonable officer that shooting a suspect on sight because he had a gun that he had recently used to hit someone, without giving him any warning or order to stop, when the suspect is not hurting anyone, pointing his gun at anyone or attempting to escape, and continuing to shoot him five more times after he no longer has the gun and is on the ground, violates the suspect's Fourth Amendment rights.

Defendants argue that plaintiff's account cannot create a triable factual dispute because it is not offered in a sworn affidavit. Plaintiff's account is set forth in four documents: the original form complaint (ECF No. 1), the hand-written amended complaints (ECF No. 21), the opposition (ECF No. 31), and the sur-reply (ECF No. 35). The original complaint and the sur-reply are both sworn, while the amended complaint and opposition are not sworn. Plaintiff is not a lawyer, and both his incarceration and serious medical problems limit his ability to learn and understand the legal requirements for opposing summary judgment. It is reasonable to assume that if plaintiff had legal training or access to sound legal advice, he would have submitted his account in a sworn affidavit, or at least sworn to the factual account in his amended complaint — as he did in the original complaint when he prompted to do so by the form complaint — and in his opposition — as he did in the sur-reply when defendants alerted him to the issue in their reply brief. Accordingly, for purposes of the present motion, plaintiff's account of the incident as set forth in the four documents listed above is construed as sworn and is accepted as opposing evidence to the extent it sets forth facts that are within plaintiff's personal knowledge. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were based on his personal knowledge). Defendants have, of

7

course, had the opportunity to obtain sworn deposition testimony from plaintiff, but have not done so. They may have the opportunity to do so again if they so choose at a later stage of this case.

C. R<small>EFERRAL TO</small> F<small>EDERAL</small> P<small>RO</small> B<small>ONO</small> P<small>ROJECT</small>

As defendants summary judgment motion is denied, good cause exists to refer this case to the Federal Pro Bono Project for location and of pro bono counsel. Upon an attorney being located to represent plaintiff, that attorney shall be appointed as counsel for plaintiff in this matter until further order of the court. Following such appointment, this case will be referred to a United States Magistrate Judge for mediation, and if the case does not settle in those proceedings, this case will be set for trial.

**CONCLUSION**

Defendants' motion for summary judgment is **DENIED**.

All proceedings in this action are **STAYED** until four weeks from the date an attorney is appointed to represent plaintiff in this action, unless otherwise ordered.

**IT IS SO ORDERED.**

Dated: September 8, 2016.

W<small>ILLIAM</small> A<small>LSUP</small>
U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> J<small>UDGE</small>